**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**DOUGLAS E. KAMPFER,**

       **Plaintiff,**

  v.                                                  No. 1:22-cv-1235
                                                                      (TJM/ML)

**NATHAN LITTAUER HOSPITAL,**
**SEAN H. FADALE,** Nathan Littauer Hospital
Administrator, **DR. MOHAMMAD AL-HASAN,**
Emergency Room Physician,

       **Defendants.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**

## DECISION & ORDER

Before the Court is Defendant Mohammad Al-Hasan's motion to dismiss the Complaint and Defendants Nathan Littauer Hospital and Sean H. Fadale's motion for judgment on the pleadings. See dkt. #s 23, 25. The parties have briefed the issues, and the Court will decide the matter without oral argument.

**I.    Background**

This case concerns the medical treatment that Plaintiff Douglas E. Kampfer received at Nathan Littauer Memorial Hospital in Gloversville, New York on August 13, 2022. See Complaint ("Complt."), dkt. # 1, at 3. On that date, Plaintiff, who is a recipient of Medicare, fell ten feet from a ladder onto a concrete floor. Id. He fractured his left wrist, dislocated

1

bones in his left hand, and lacerated his eyebrow. Id. The injury to Plaintiff's eyebrow came when his eyeglasses shattered in the fall and "impaled the skin" of the eyebrow. Id.

Plaintiff, driven by his wife and daughter, arrived at Nathan Littauer Hospital at 11:30 a.m. on August 13, 2022. Id. Once Plaintiff was placed in an emergency room, "plaintiff's shirt and clothing were removed, [and] plaintiff's wrist and arm were placed on a pillow[.]" Id. He received no treatment for the laceration he suffered, however, until 3:30 p.m. Id. Treatment for the laceration came after Plaintiff had his wrist "set and splintered with a piece of plastic." Id.

Defendant Doctor Mohammad Al-Hasan attempted to order a CT scan for the Plaintiff. Id. Plaintiff refused, explaining that he lacked insurance. Id. Plaintiff lacked Medicare Part B benefits, but told Dr. Al-Hasan that he would be willing to have an X-ray "instead for cost reasons." Id.

Plaintiff alleges that Dr. Al-Hasan's unwillingness to order a skull X-ray and his "failure to properly clean the facial laceration at 3:30" caused "foreign material" to "[remain] imbedd[ed] in" Plaintiff's "facial wounds." On August 18, 2022, Plaintiff's wife Barbara Kampfer removed the stitches from Plaintiff's eyebrow and eyelid. Id. at 4. She did so because Plaintiff did not have a family doctor or insurance. Id. An infection had "caused swelling and impeded the plaintiff's vision." Id.

On September 12, 2022, "a Complaint was filed[1] with the Hospital's administrator [Defendant] Sean H. Fadale[.]" The Complaint explained the events in question and "request[ed] the ability to settle the complaint." Id. Plaintiff received a formal response

---

[1]From context, it appears that Plaintiff filed that complaint.

2

from Christine Waghorn, Director of Performance Improvement, on October 13, 2022.  Id. Waghorn's letter "claim[ed] an investigation took place and that the Hospital believe[d] that they provided appropriate medical treatment."  Id.

On September 16, 2022, "a complaint was filed[2] with the New York State Department of Health" about the August 13, 2022 incident.  Id.  The State Department of Health notified Plaintiff on October 4, 2022 that the complaint had been referred to the Office of Professional Medical Conduct.  Id.  The Department of Health also requested that Plaintiff make a complaint to DNV Healthcare.  Id.  Plaintiff filed the complaint on October 9, 2022. Id.

Plaintiff continues to suffer recurring infections in his eyebrow, and his wounds continue to expel pieces of plastic.  Id.  His wrist is "deformed from not being properly pinned."  Id.

Plaintiff's Complaint contains seven causes of action.  He alleges that his claim is "brought pursuant to 42 CFR 482.1, 42 CFR 482.13(b)(2), [and] 42 CFR 13(c)(3)."  Id. at 1. He alleges that the Court has jurisdiction "pursuant 28 U.S.C. section 1331, 28 U.S.C. 1343(3) and (4), together with 28 U.S.C. section 2201(a), the Elder Justice Act."  Count 1 contends that Dr. Al-Hasan's "inactions and negligence" do "not supersede the request of Plaintiff . . . to have an [X-Ray] as an alternative to a CT scan."  Id. at 5.  As such, he contends "Nathan Littauer Hospital is 'vicariously' liable for the violation of Plaintiff's Patients Rights pursuant to 42 CFR 482.13(b)(2) planning and treatment."  Id.  Count 2 alleges that Defendant Nathan Littauer Hospital is vicariously liable for the negligence of Dr.

---

[2]From context, it appears that Plaintiff filed the complaint.

3

Al-Hasan. Id. Count 3 alleges that the Defendant hospital is liable to Plaintiff for Dr. Al-Hasan's alleged failure to provide care, since the hospital knew that Plaintiff was uninsured. Id. at 5-6. Count 4 alleges that the Hospital is liable for Dr. Al-Hasan's failure to treat Plaintiff, which violated his rights as a patient. Id. at 6. Count Five alleges that the Defendant hospital violated Plaintiff's rights under the Medicare regulations and "seeks review of [the] Hospital's decision." Id. Count 6 alleges that the Defendant Hospital and Defendant doctor violated his rights under the Medicare regulations. Id. at 7. Count 7 alleges that Defendants "did not provide Emergency Services the way a doctor under normal situations of medical services to prevent mistakes" would have and, "knowing the extent of the injures to a Senior Citizen Plaintiffs, together with the inability of the plaintiff [to] pay for services of another hospital" failed to provide proper medical care. Id. Defendants should have called in an orthopedic physician to "set and pin the" Plaintiff's wrist and remove the foreign object from Plaintiff's eyebrow. Id.

After service of the Complaint, Defendants filed the instant motions. Plaintiff responded, bringing the case to its present posture.

## II.   LEGAL STANDARDS

### A.   Rule 12(b)(1)

Defendant Al-Hasan seeks dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1), alleging that Plaintiff has failed to allege that the Court has subject matter jurisdiction. "A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if the court 'lacks the statutory or constitutional power to adjudicate it[.]'" Cortlandt St. Recovery Corp. v. Hellas Telecomms., 790 F.3d 411, 416-17

(2d Cir. 2015) (quoting Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)). "In resolving a motion to dismiss for lack of subject matter jurisdiction . . . a district court . . may refer to evidence outside the pleadings." Makarova, 201 F.3d at 113. "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." Id. "Subject matter jurisdiction is a 'threshold question that must be resolved . . . before proceeding to the merits.'" United States v. Bond, 762 F.3d 255, 263 (2d Cir. 2014) (quoting Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 88 (1998)).

### B.     Rule 12(c)

Defendants Nathan Littauer Hospital and Sean H. Fadale move for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). "The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2013). A defendant moving for dismissal pursuant to Rule 12(b)(6) argues that the plaintiff has not stated a claim upon which relief could be granted, even if all factual allegations in the complaint were proved true. In addressing such motions, the Court must accept "all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." Holmes v. Grubman, 568 F.3d 329, 335 (2d Cir. 2009). This tenet does not apply to legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. (quoting Bell Atl. v. Twombly, 550 U.S. 544, 570 (2007)).

**III.     Analysis**

Both motions raise the issue of whether the statutes under which Plaintiff purports to bring his claims provide a private right of action.  The parties agree that case lacks complete diversity of citizenship, and that jurisdiction pursuant to 28 U.S.C. § 1332 is not available.  Jurisdiction, if it exists, must come because of subject-matter jurisdiction, because the Court has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.

**A.     Private Right of Action**

Defendants argue that the case should be dismissed because the Court lacks subject-matter jurisdiction.  They contend that the federal laws under which Plaintiff seeks to sue do not contain a private right of action, and he therefore cannot state a claim for which any federal law could provide relief.  Plaintiff contends that he has pointed to federal statutes that give him an implied private right of action.  He also contends that, since he seeks a declaratory judgment, he has provided a basis for jurisdiction.

The question, then, is whether Plaintiff's Complaint relies on a federal law that provides him with a means of suing the Defendants and obtaining relief.  "Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress."  Alexander v. Sandoval, 532 U.S. 275, 286 (2001).  A court must "interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy."  Id.  Without a "statutory intent" to create a private right of action, "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute."  Id. at

6

286-87. "A federal statute may create a private right of action either expressly or, more rarely, by implication." Republic of Iraq v. ABB AG, 768 F.3d 145, 170 (2d Cir. 2014). "'[I]t is settled that there is an implied cause of action only if the underlying statute can be interpreted to disclose the intent to create one.'" Cohen v. Viray, 622 F.3d 188, 193 (2d Cir. 2010) (quoting Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, 552 U.S. 148, 164 (2008)). "To discern Congress's intent," a court must "'look first to the text and structure of the statute.'" Id. (quoting Lindsay v. Association of Professional Flight Attendants, 581 F.3d 47, 52 (2d Cir. 2009)). Courts use factors from Court v. Ash, 422 U.S. 66, 78 (1975) to help "'illuminate'" whether a private right of action exists:

> First, is the plaintiff one of the class for whose especial benefit the statute was enacted . . . that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? . . . Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?

Id. (quoting Cort, 422 U.S. at 78). In the end, "'[w]here Congress has manifested no intent to provide a private right of action,'" a court "'cannot create one.'" M.F. v. State Exec. Dep't Div. of Parole, 640 F.3d 491, 497 (2d Cir. 2011) (quoting Lindsay, 581 F.3d at 52).

Plaintiff points to several federal regulations that enforce provisions of the Medicare and Medicaid laws, as well as federal laws that protect against abuse of older people. Courts that have examined these issues have made clear that none of the statutes that Plaintiff cites provide for a private right of action, and the Court is persuaded by that analysis. As Judge Stewart has explained:

> the federal Medicare and Medicaid regulations regarding standards for medical records and care create no explicit private right of action in favor of an individual patient, and leave the remedy for any deficiency in care or record keeping with the Secretary of HHS, who has sole responsibility for promulgating federal health, safety and quality standards applicable to hospitals participating in Medicare/Medicaid

programs.

Savage v. St. Peter's Hosp. Ctr. of Albany (Estate of Savage), No. 17cv1363, 2018 U.S. Dist. LEXIS 103593, at*14-15 (N.D.N.Y. June 21, 2018); see also, Stewart v. Bernstein, 769 F.2d 1088, 1093 (5th Cir. 1985) ("'The federal judiciary will not engraft a remedy on a statute, no matter how salutary, that Congress did not intend to provide.'") (quoting California v. Sierra Club, 451 U.S. 287, 297 (1981)); Scott v. Pfizer, Inc., 182 Fed. Appx. 312, 316 (5th Cir. 2006) ("the Medicare Act and the Medicaid Act do not provide for a private cause of action."); Abner v. Mobile Infirmary Hosp., 139 Fed. Appx. 857, 8858 (11th Cir. 2005) ("The Medicare Act does not create a private right of action for negligence[.]").

Plaintiff also points to the Elder Justice Act.  "[T]he Elder Justice Act of 2009, 42 U.S.C. § 1397, does not confer a private right of action." Cook v. Doe, No. 21-cv-01720-JSC, 2021 U.S. Dist LEXIS 113116, at *7 (N.D. CA. May 17, 2021); Wister v. White, No. 19-cv-05882-WHO, 2019 U.S. Dist. LEXIS 216028 at *7 (N.D. CA. Dec. 16, 2019) (Elder Justice Act does not "[confer] a private right of action."); Plummer v. County of L.A., No. 2:20-cv-04568, 2021 U.S. Dist. LEXIS 183546, at *27 (C.D. CA. Aug. 12, 2021) ("Plaintiff alleges a violation of the Elder Justice Act.  To the extent that Plaintiff is referencing the Elder Abuse and Extortion Act or the Elder Justice Act of 2009 . . . no private right of action was created by either statute.").

Thus, the statutes under which Plaintiff seeks to bring claims do not provide him with a private right of action.  Since Plaintiff cannot bring any claims under these statutes, he has not implicated federal-question jurisdiction in his Complaint.  Drayton-Smith v. Wright, No. 4:15-CV-1952, 2016 U.S. Dist. LEXIS 61560, at *4 (E.D. Mo. May 10, 2016).

Plaintiff contends that his request for declaratory judgment implicates federal-

8

question jurisdiction. Courts are clear, however, that "the Declaratory Judgment Act does not by itself confer subject matter jurisdiction on the federal courts." Correspondent Servs. Corp. v. First Equities Corp., 442 F.3d 767, 769 (2d Cir. 2006). A plaintiff seeking to establish jurisdiction needs to point to "an independent basis of jurisdiction before a district court may issue a declaratory judgment." Id. Here, Plaintiff points to no such independent basis, and the Court must grant the Defendants' motion in this respect.

### B.  Section 1983 Claim

Defendants Fadale and the Nathan Littauer Hospital argue that, to the extent that Plaintiff seeks to bring a claim against them for violation of his constitutional rights pursuant to 42 U.S.C. § 1983, his claim must fail because the Complaint does not plausibly allege state action by those Defendants. Plaintiff denies that he seeks relief under Section 1983.

Even if Plaintiff were seeking relief under Section 1983, the Court would find that Plaintiff has not plausibly alleged that his injuries were caused by a person acting under color of state law. "To state a § 1983 claim, a plaintiff must establish that the defendant deprived him of a federal or constitutional right while acting under the color of state law." Cox v. Warwick Valley Cent. Sch. Dist., 654 F.3d 267, 272 (2d Cir. 2011). No action exists for "'merely private conduct, no matter how discriminatory or wrongful'" Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999) (quoting Blum v. Yaretsky, 334 U.S. 1, 13 (1948)). To establish state action, Plaintiff must show that the person who deprived him of his constitutional rights "'may fairly be said to be a state actor.'" Grogan v. Blooming Grove Volunteer Ambulance Corps, 768 F.3d 259, 264 (2d Cir. 2014) (quoting Cranley v. Nat'l Life Ins. Co. of Vt., 318 F.3d 105, 111 (2d Cir. 2003)). State action occurs when "the 'allegedly unconstitutional conduct is fairly attributable to the State.'" Id. (quoting Sullivan, 526 U.S. at

9

50). When a plaintiff contends that a private actor violated his rights, the plaintiff proves state action "by demonstrating that 'there is such a close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" Id. (quoting Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. , 288 295 (2001)).

To determine whether the behavior can be attributed to the state, the Court must "[identify] 'the specific conduct of which the plaintiff complains, rather than the general characteristics of the entity.'" Id. (quoting Fabrikant v. French, 691 F.3d 193, 207 (2d Cir. 2012)). In making this determination, Courts employ a number of factors, including "[t]hree main tests[.]" Fabrikant, 691 F.3d at 207. Those tests are:

> (1) [when] the entity acts pursuant to the coercive power of the state or is controlled by the state ('the compulsion test'); (2) when the state provides significant encouragement to the entity, the entity is a willful participant in joint activity with the sate, or the entity's functions are entwined with state policies ('the joint action test' or 'close nexus test'); or (3) when the entity has been delegated a public function by the state ('the public function test')

Id. (quoting Syblaski v. Indep. Grp. Home Living Program, 546 F.3d 255, 257 (2d Cir. 2008)).

The only public role to which Plaintiff's Complaint points for the Defendant Hospital is that the Hospital receives public funds from Medicare and Medicaid. Plaintiff might also argue that both the Hospital and the individual defendants subject to extensive state regulation. Such a relationship with the state, however, does not constitute a sufficiently close nexus to the activities of the state to establish that the Defendants acted in the role that could be fairly treated as action of the state itself. Grogan, 768 F.3d at 264. Courts have been clear that a patient receiving treatment from a private hospital supported in part

with public funds does not implicate state action.  See Jones v. Beth Isr. Hosp., 2018 U.S. Dist. LEXIS 62228 at *14 (S.D.N.Y. April 11, 2018) (finding it "well established law that private physicians are afforded discretion in deciding whether to commit a patient; that State regulation is by itself insufficient to show a joint enterprise between the State and a private hospital; and that provision of mental health treatment is not a function traditionally within the exclusive prerogative of the State" and dismissing a claim that a hospital and physicians were state actors).  Plaintiff also fails to allege any public action by Defendant Fadale, and could not.  The motion will be granted in this respect as well.

In the end, Plaintiff's claim here does not implicate any federal law and does not invoke federal-question jurisdiction.  The Court finds that Plaintiff's claim here is for medical malpractice, a tort that implicates New York law.  Since diversity of citizenship does not exist in this case and cannot provide jurisdiction, the Court lacks authority to entertain this matter.  The Court will therefore grant the Defendants' motions to dismiss.

The Court doubts that Plaintiff can plead any additional facts or claims that will implicate federal-question jurisdiction.  Still, because of the Plaintiff's pro-se status, the Court will allow him an opportunity to file an amended pleading in this court. If Plaintiff chooses to file such a pleading, he must not include any claims that the Court has already dismissed.  He must recognize that the Medicare and Medicaid Acts, as well as any Elder Justice Act, do not provide a private right of action.  Such claims are dismissed with prejudice.  Plaintiff must recognize as well that he has pled facts which make clear that the Defendants are not state actors subject to claims of a violation of constitutional rights under Section 1983.  He may not bring another Section 1983 claim against these Defendants without some good-faith basis to show they are state actors.  If Plaintiff can offer a claim in

11

good faith on some other basis, the Court will permit such re-pleading.

At the same time, the Court also recognizes, as do Defendants, that Plaintiff's claims here are more in the nature of medical malpractice claims. Those claims involve state law and cannot implicate federal-question jurisdiction. Plaintiff has already admitted to facts which prevent him from pleading diversity jurisdiction. He has not pled facts which would preclude him from prevailing on a state-law tort claim, however. The Court's dismissal here is thus without prejudice to Plaintiff filing a cause of action in an appropriate New York forum.

## V.   CONCLUSION

For the reasons discussed above, Defendants' motions to dismiss, dkt. # 23 and 25, are hereby **GRANTED**. The motions are hereby **GRANTED** without prejudice to the extent described above. If Plaintiff elects to re-plead his claims in the way described by the Court, he shall file an Amended Complaint within 21 days of the date of this Order. That Amended Complaint must not re-plead any of the claims dismissed by the Court, and must offer allegations sufficient to implicate the Court's federal question jurisdiction. If Plaintiff fails to file an Amended Complaint within the time specified in this Order, the Clerk of Court will close the case. Any dismissal of Plaintiff's claims is without prejudice to re-filing in an appropriate state forum.

**IT IS SO ORDERED.**

Dated: July 28, 2023

Thomas J. McAvoy
Senior, U.S. District Judge

12